**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| NRRM, LLC *doing business as* Carshield, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:24-cv-01128-SEP |
| | ) |
| ENDURANCE WARRANTY SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Remand, Doc. [19]. The motion is fully briefed and ready for disposition. *See* Docs. [20], [24], [25]. For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND

This case arises from a contract dispute. According to Plaintiff, the parties entered into a settlement agreement ("Settlement Agreement") in 2020, after Plaintiff had "gone back and forth with [Defendant] for years over [Defendant's] improper use of CarShield's federally registered 'CARSHIELD' trademarks to generate Google ads to confuse consumers." Doc. [20] at 1. Plaintiff maintains that the Settlement Agreement prohibited Defendant and its third-party advertising vendors "from 'ever again' using or purchasing CARSHIELD, CAR SHIELD and similar variants as a keyword for any advertising." *Id*.

In the fall of 2023, Plaintiff noticed that Defendant was using its "CARSHIELD" trademark and its variants to generate sales. *Id*. According to Plaintiff, "[w]hen 'CarShield' was used as a keyword on internet search engines, large numbers of generic sounding ads for 'car warranties' or 'top auto warranties' appeared atop the sponsored search results, all without identifying the party doing the advertising." *Id*. Plaintiff also accused Defendant of running "ads employing CarShield's blue Shield Logo, and in other cases us[ing] the word 'Shield' and 'CarShield' directly in the ad to dupe consumers." *Id*. Plaintiff claims "[c]licking on these ads all led one way or another to [Defendant]." *Id*. at 2. Plaintiff initially brought suit in the Eastern District of Missouri alleging trademark infringement, unfair competition, and false advertising under the Lanham Act and state law. *Id*. According to Plaintiff, documents produced during

1

discovery showed Defendant "entered into agreements with a number of Third Party Advertisers to do what it had expressly agreed not to do in the 2020 Settlement Agreement—buy 'CARSHIELD' marks as keywords on internet search engines." *Id*.  Plaintiff claims it had not reviewed the specific terms of the Settlement Agreement for some time, and then while collecting documents for its own document production, it noticed the Settlement Agreement had a forum selection clause requiring that actions to enforce the agreement be brought in St. Charles County, Missouri.  *Id*.  Soon after that discovery, Plaintiff claims, it voluntarily dismissed the federal action and filed a breach of contract action, including the same federal and state claims as the prior federal court complaint, in the St. Charles County Circuit Court.  *Id*.  Defendant filed a timely notice of removal, invoking federal question jurisdiction.  *See* Doc. [1].  Plaintiff now moves to remand, asserting "St. Charles County Circuit Court is the required and only proper jurisdiction and venue."  Doc. [20] at 3.

## LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending."  If the district court lacks subject matter jurisdiction or some other defect makes removal improper, 28 U.S.C. § 1447 enables a plaintiff to seek remand to state court.  On a motion to remand, the party seeking removal bears the burden of demonstrating federal jurisdiction by a preponderance of the evidence, and the Court must resolve any doubt as to the propriety of removal in favor of remand.  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010).

"Courts who have considered the issue, including the Eighth Circuit, have concluded that removal in the face of a valid forum selection clause fixing venue in the state courts is the sort of defect that qualifies a case for remand."  *City of Springfield, Mo. v. T-Mobile Cent. LLC*, 2019 WL 2525617, at *1 (E.D. Mo. June 19, 2019) (citing *iNet Directories, LLC v. Developershed, Inc.*, 394 F.3d 1081, 1082 (8th Cir. 2005)).  "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching."  *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999).  "Only some compelling and countervailing reason will excuse enforcement of a bargained-for forum

2

selection clause." *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F3d. 786, 789 (8th Cir. 2006) (internal quotation marks and citations omitted).

## CHOICE OF LAW

The Eighth Circuit has not definitively decided whether state or federal law governs the enforceability or interpretation of a forum selection clause. *See Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895, 897 n.2 (8th Cir. 2021) ("In the past, we have expressly declined to decide 'whether to apply state or federal law in determining the enforceability of' a forum-selection clause . . . , [and] [a]lthough the enforceability and interpretation of forum-selection clauses are distinct concepts . . . , we similarly decline to take a side on the issue of what law applies to the interpretation of a forum-selection clause.") (internal quotation marks and citations omitted).  Because the parties cite only federal law, and because the Eighth Circuit has indicated it is inclined to agree that federal law applies, this Court will apply federal law to the enforceability and interpretation of the forum selection clause. *See Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) ("In this case, both parties operate under the assumption that federal law controls the question of whether this forum selection clause applies. We are inclined to agree, but acknowledge that this appears to be an open question.") (internal citation omitted); *see also Atlas Diagnostic Imagine, LLC v. Numed, Inc.*, 2024 WL 1463426, *4 n.6 (E.D. Mo. March 14, 2024) (quoting *Perficient, Inc. v. Priore*, 2016 WL 866090, at *6 n.3 (E.D. Mo. Mar. 7, 2016)) ("The Eighth Circuit Court of Appeals applies federal law in a forum-selection analysis."); *PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys, Inc.*, 2020 WL 3578574, *7 (E.D. Mo. July 1, 2020) ("This Court agrees with those courts that have found that the enforceability of a forum-selection clause presents primarily a procedural question to which federal law should apply, particularly in light of the Eighth Circuit's indication that it is inclined to agree with this approach.").

## DISCUSSION

**I.     Plaintiff did not waive its right to enforce the forum selection clause.**

Defendant argues that Plaintiff waived its right to enforce the forum selection clause by initially bringing this action in federal court.  Doc. [24] at 10.  According to Defendant, "Plaintiff's actions indicate forum shopping [as] Plaintiff first tested the waters in federal court—filing two complaints there that were subject to motions to dismiss.  Plaintiff then apparently found a Settlement Agreement from four years ago that Plaintiff's counsel in this case negotiated

3

and drafted; then voluntarily dismissed the federal court case after months of written and oral discovery and Endurance's two motions to dismiss; and brought the case in a small county in Missouri, where coincidentally Plaintiff's headquarters is located." *Id*. Plaintiff counters that its initial federal action did not include a claim for breach of the Settlement Agreement, and that it filed such a claim, along with its related claims, in state court as soon as it discovered the mandatory forum selection clause in the Settlement Agreement. Doc. [25] at 11. Defendant cites only one case in its argument that Plaintiff waived its right to enforce the forum selection clause. Doc. [24] at 10 (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods.*, Inc., 660 F.3d 988, 994 (7th Cir. 2011)) ("For waiver of the right to arbitrate to be inferred, we must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate.")). Plaintiff cites no case law but maintains "Defendant's citation to *Kawasaki* is highly misleading," given its arbitration context. Doc. [25] at 10.

As another district court in this circuit recently observed, "[t]here is a lack of authority in the Eighth Circuit regarding the standard for waiver of a forum-selection clause." *Wildhawk Investments, LLC v. Brava I.P., LLC*, 2022 WL 18539509, *2 (S.D. Iowa Feb. 28, 2022).[1] In *Wildhawk*, the district court decided to "apply the standard for waiver of an arbitration clause to waiver of a forum-selection clause," given "the similarities between forum-selection clauses and arbitration clauses and their treatment by courts." *Id*.; *see also Se. Power Grp., Inc. v. Vision 33, Inc.*, 855 Fed. Appx. 531, 535-36 (11th Cir. 2021) (unpublished) (citing *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) (applying the waiver standard for arbitration clauses given the parties "consensus" on the standard and the court's recognition of the

---

[1] Although both parties in *Wildhawk* assumed that federal law applied to the question of waiver, the district court considered it under both federal and state law. *See* 2022 WL 18539509, *2. Here, as in *Wildhawk*, neither party argues state law should govern waiver. *See In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 614 (8th Cir. 2024) (declining to entertain defendants' argument that state law applied to waiver of arbitration because the companies had failed to raise that argument before the district court and even suggested federal law applied in a hearing). Plus, after *Wildhawk* was decided, the United States Supreme Court observed that the Eighth Circuit "generally" applies federal law to determine whether a party has waived arbitration. *See Morgan v. Sundance*, 596 U.S. 411, 416-17 (2022) (declining to resolve disputes about the role of state law in "resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate," and acknowledging "[t]he Courts of Appeals, including the Eighth Circuit, have generally resolved cases like this one as a matter of federal law, using the terminology of waiver"). Therefore, the Court applies federal law in determining whether Plaintiff has waived its right to enforce the forum selection clause.

similarities between arbitration clauses and forum selection clauses); *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426-27 (5th Cir. 2016) (recognizing two possible tests for assessing waiver including the standard used for waiver in the arbitration context).  Lacking authoritative guidance from the Eighth Circuit, the Court agrees with the courts that have found it appropriate, based on the similarities between arbitration clauses and forum selection clauses, to apply the standard for waiver of an arbitration clause to the question of whether Plaintiff has waived its right to enforce the forum selection clause.  *See, e.g.*, *Wildhawk*, 2022 WL 18539509, at *2.

In the Eighth Circuit, a party waives its right to enforce an arbitration clause if it "(1) knew of its existing right and (2) acted inconsistently with it."[2]  *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 614 (8th Cir. 2024) (cleaned up).  Here, the forum selection clause was contained in the Settlement Agreement between Plaintiff and Defendant.  Plaintiff did not bring a breach of contract claim based on the Settlement Agreement in the first federal action.  Plaintiff's first federal complaint did not even mention the Settlement Agreement.  *See NRRM, LLC v. Endurance Warranty Services*, 4:24-cv-00412-SPM (filed Mar. 3, 2024), Docs. [1] (Complaint); [21] (Amended Complaint).  Plaintiff claims it dismissed the initial federal action as soon as it discovered the mandatory forum selection clause while collecting documents for its own document production.  Doc. [20] at 2; Doc. [25] at 11.  The filing dates are consistent with Plaintiff's account,[3] and Defendant has adduced no evidence to contradict it.  Based on this limited information, the Court cannot find that Plaintiff acted inconsistently with its right to enforce the forum selection clause.  Because Plaintiff did not "intentional[ly] relinquish[] or abandon[] . . . a known right," it has not waived its right to enforce the forum selection clause. *In re Pawn Am. Consumer Data Breach Litig.,* 108 F.4th at 613.

II.     **The forum selection clause waives Defendant's right to remove.**

"A forum selection clause may waive a defendant's right to remove if it is 'clear and unequivocal.'"  *OHM Hotel Group, LLC v. Dewberry Consultants, LLC*, 2016 WL 427959, *4

---

[2] *Wildhawk* also considered whether there had been prejudice to the other party.  *See* 2022 WL 18539509, at *5.  Soon after *Wildhawk* was decided, the Supreme Court found that waiver of the right to arbitrate could not be conditioned on a showing of prejudice.  *See Morgan v. Sundance*, 596 U.S. 411, 417 (2022).  Therefore, consideration of prejudice is no longer required.

[3] The initial federal action was voluntarily dismissed by Plaintiff on August 9, 2024, and the present case was removed from the Circuit Court of St. Charles, County, Missouri on August 19, 2024.  *See* Doc. [1]; *NRRM, LLC v. Endurance Warranty Services*, 4:24-cv-00412-SPM (filed March 3, 2024), Doc. [39].

5

(E.D. Mo. Feb. 4, 2016) (quoting *Weltman v. Silna*, 879 F.2d 425, 427 (8th Cir. 1989)).  In *Weltman*, the Eighth Circuit did not quote the forum selection clause but found it was not "clear and unequivocal" because it did not address removal.  *Weltman*, 879 F.2d at 427.  The Eighth Circuit addressed waiver again in *iNet Directories, LLC v. Developershed, Inc.*, 394 F.3d 1081 (8th Cir. 2005).  There, "the Eighth Circuit held that specific language waiving a right to 'remove' is not necessarily required; language waiving a right to object to venue is sufficient to waive the right to remove."  *Hurtt Fabricating Corp. v. RN'G Constr., Inc.*, 2024 WL 2048869, *3 (E.D. Mo. May 8, 2024) (citing *iNet Directories*, 394 F.3d at 1081-82).

"The Eighth Circuit has not addressed whether a defendant may clearly and unequivocally waive its right to remove through a forum selection clause that contains no specific 'waiver' language."  *Id*. at *4.  "However, several district courts within the Eighth Circuit have found that a defendant may do so through a forum selection clause that specifies a state-court forum and includes language such as 'sole,' 'exclusive,' or 'only,' reasoning that such language demonstrates the parties' agreement that the only proper venue for resolving disputes is the specified state court, to the exclusion of all other venues."  *Id*.; *see, e.g.*, *OHM Hotel Grp., LLC*, 2016 WL 427959, at *7; *Push Pedal Pull, Inc. v. Casperson*, 971 F. Supp. 2d 918, 928 (D.S.D. 2013); *Valspar Corp. v. Sherman*, 211 F. Supp. 3d 1209, 1211-13 (D. Minn. 2016).

The Settlement Agreement's forum selection clause ("Settlement Clause") states:

> Choice of Law, Jurisdiction and Venue. The Parties agree that the laws of the State of Colorado shall govern this Agreement, and any proceedings related to this Agreement, or to enforce or interpret this Agreement *shall be brought in the court located in St. Charles County, Missouri.*

Doc. [20-2] at 7 (emphasis added).  Plaintiff argues the Settlement Clause "includes the combination of mandatory language and exclusive jurisdiction, plainly indicating the intention of the parties to limit venue to *the* state court in St. Charles County, Missouri, to the exclusion of all other possibilities."  Doc. [20] at 12.  According to Plaintiff, "there is only one court in St. Charles County, Missouri[, and] [t]his is not great surprise as CarShield is headquartered in St. Charles County, Missouri, and specifically included this clause as a condition of settlement."  *Id*.  Defendant counters that "district courts within the Eighth Circuit have concluded that while the term 'shall' is mandatory, it is not exclusive."  Doc. [24] at 5.  And "[t]he fact that a location specified in the forum-selection clause does not have a federal courthouse does not change the calculus."  *Id*. at 6.

6

Plaintiff cites several cases in which courts found waiver of the right to remove. *See OHM Hotel Grp., LLC*, 2016 WL 427959, at *2 (emphasis added) (forum selection clause: "[t]he parties agree that the *sole* and *exclusive* venue for any litigation arising out of or relating to this agreement, or the alleged breach thereof, shall be the Circuit Court for St. Louis, County, Missouri."); *Push Pedal Pull*, 971 F. Supp. 2d at 928 (emphasis added) (forum selection clause: "the state court situated in Minnehaha County, South Dakota, shall be the *exclusive* jurisdiction of any dispute relating to this Agreement"); *Valspar Corp.*, 211 F. Supp. 3d at 1211-13 (emphasis added) (forum selection clause: "shall be adjudicated *only* in the state court located in Hennepin County, Minnesota, and I consent to the state court located in Hennepin County, Minnesota, as the *exclusive* venue for resolving such disputes"). While the Court concedes that the clauses at issue in those cases share certain characteristics with the Settlement Clause, they also differ from it in one notable respect:  They explicitly indicate exclusivity, using a term like "sole" or "exclusive" or "only," which the Settlement Clause does not.

Defendant points to that difference and cites several cases supporting that "shall" is mandatory but not exclusive. For example, in *Champion Brands, L.L.C. v. McLeod*, the court explained, "the phrase 'shall have venue in' Henry County Circuit Court could (as Plaintiff suggests) be interpreted as meaning 'venue shall be proper only in Henry County,' but it could also simply mean that 'venue shall be proper in Henry County' and that no party can challenge venue if suit is filed there." 2021 WL 5541956, *1 (W.D. Mo. July 13, 2021). Without any "additional language suggesting exclusivity or otherwise establishing that Henry County Circuit Court 'shall' be a proper venue to the exclusion of all other venues," the Court permitted removal to federal court. *Id*. Other courts in this circuit have interpreted clauses like the one in *Champion Brands* and found no waiver of the right to remove. *See Hurtt Fabricating Corp..*, 2024 WL 2048869, at *5 (forum selection clause: "in the event of litigation agree that venue be in St. Louis County, MO"); *Midwest Public Auction v. Motorsports of Bowling Green, Inc.*, 2012 WL 5413902, *4 (E.D. Mo. Nov. 6, 2012) (forum selection clause: "the parties agree that Missouri shall have exclusive jurisdiction and that the appropriate venue for all causes of action shall be Butler County, Missouri"); *Stein v. Golden*, 2019 WL 13233232, at *8-9 (S.D. Iowa June 3, 2019) (forum selection clause: "[v]enue for the action or proceeding shall be in Los Angeles County, West District"); *Mihlfeld & Assocs., Inc. v. Glock, Inc.*, 2005 WL 1009579, at

7

\*1-2 (W.D. Mo. Apr. 27, 2005) (forum selection clause: "[c]ustomer agrees that the proper venue for such action shall be in the Circuit Court of Greene County, Missouri").

Plaintiff attempts to distinguish those cases on the grounds that their forum selection clauses "all focused on where venue is proper, not where a party shall bring an action to enforce a contract." Doc. [25] at 5. That distinction loomed large in *Magness Oil Co. v. Piedmont Fields, LLC*, 2012 WL 1884902, at \*2 (W.D. Ark. May 23, 2012), where the forum selection clause stated, "[a]ny action shall be adjudicated in the Circuit Court of Baxter County, Arkansas." The court noted, "[t]his case presents a close call, as it falls in a middle ground between a simple agreement that venue is proper in the Circuit Court of Baxter County and explicitly stating that a party waived the right to object to the laying of venue in the Circuit Court of Baxter County." *Id*. at \*3. The court ultimately concluded "the clause at issue in this case clearly and unequivocally demonstrates, by use of the mandatory 'shall,' that the parties agree, not just that venue is proper in the Circuit Court of Baxter County, but that actions shall be adjudicated in the Circuit Court of Baxter County." *Id*.

The Court finds that the Settlement Clause here also falls in the middle ground. It does not use language such as "sole," "exclusive," or "only," but it does use the "mandatory 'shall'" and specifies not just that venue is proper in St. Charles County, Missouri, but that any action shall be brought in a specific court, i.e., "*the* court located in St. Charles County, Missouri." Because there is no federal courthouse in St. Charles County, Missouri, the only court the Settlement Clause could be referring to is the state court located in St. Charles County.

That interpretation of the Settlement Clause is consistent with decisions of several circuit courts. In *Yakin v. Tyler Hill Corporation*, the Second Circuit perceived no ambiguity in a forum selection clause stating, "[i]t is agreed that the venue and place of trial of any dispute that may arise out of this Agreement . . . shall be in Nassau County, New York." 566 F.3d 72, 76 (2d Cir. 2009). The court found remand proper because there was no federal courthouse in Nassau County at the time of litigation, and "no reasonable reading of the clause permits the interpretation that the parties had agreed to trial in Suffolk County or Brooklyn because those courthouses were within the Eastern District of New York, which spans an area including Nassau County." *Id*; *see also Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674 (4th Cir. 2018) ("Because there is no federal courthouse in the designated county, removal of the case to federal court would mean that the dispute would be resolved in a county

8

other than the one designated by the contract.  To accept the defendants' argument would require us to re-write the clause to provide that 'the sole and exclusive venue for any dispute between the parties shall be the county in which the Facility is located, *or the county in which a federal courthouse is located that has jurisdiction over the county in which the Facility is located*.'"); *City of Albany v. CH2M Hill, Inc.*, 924 F.3d 1306, 1308 (9th Cir. 2019) ("An agreement limiting venue for litigation to a particular county unambiguously prohibits litigation in federal court when there is no federal courthouse located in the designated county."); *Collin County v. Siemens Bus. Servs, Inc.*, 2007 WL 2908926, *6 (5th Cir. Oct. 3, 2007) (unpublished) (finding persuasive "the distinction between courts encompassing an area and those sitting in or hearing cases in an area" and concluding a forum selection clause did not allow removal when no federal court sat in Collin County); *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("The contract provision, "Venue shall be in Broward County," because it uses the imperative "shall," is most reasonably interpreted to mandate venue in Broward County, and Broward County alone[, and because it] does not designate any particular forum, [ ] a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement.").

The Court is not persuaded otherwise by the cases Defendant cites.  *See Hurtt Fabricating Corp.*, 2024 WL 2048869, at *5; *Xgel Tech., LLC v. C.I. Kasei Co., Ltd.*, 2009 WL 1576837 (E.D. Mo. June 3, 2009).  In *Hurtt Fabricating*, the court found no waiver of the right to remove where the forum selection clause stated, in part, "[t]he applicant . . . in the event of litigation agrees that venue be in St. Louis County, MO."  *Id*.  In *Xgel Tech., LLC v. C.I. Kasei Co., Ltd.*, the court held that a forum selection clause agreeing "to submit any judicial disputes to the appropriate courts in Phelps County, Missouri" was "a geographical limitation and [did] not constitute a waiver of defendants' right to remove the case to this Court, undoubtedly 'an appropriate court[ ] in Phelps County, Missouri.'"  2009 WL 1576837, *1-2.  Those cases are readily distinguishable from this one.  While the Settlement Clause "falls in a middle ground between a simple agreement that venue is proper in [St. Charles County, Missouri] and explicitly stating that a party waived the right to object to the laying of venue in [St. Charles County, Missouri]," the clause in *Hurtt Fabricating* falls squarely on the side of a simple agreement that venue is proper.  *See Hurtt Fabricating*, 2024 WL 2048869, *5 ("[T]he language here stating

9

that 'venue be' in St. Louis County could be interpreted to mean that venue must be only in St. Louis County, but it could also be interpreted to mean that venue may be in St. Louis County but may also be proper elsewhere."). And in *Xgel*, the parties agreed to submit to the "appropriate *courts* in Phelps County, Missouri." 2009 WL 1576837, at *1 (emphasis added). Because the clause used the plural "courts," it was not unreasonable for the court to find that the forum selection clause included the federal court encompassing Phelps County, Missouri. Here, however, the Settlement Clause refers to *one* court. It would contradict the plain meaning of the Settlement Clause to interpret "*the* court located in St. Charles County, Missouri" to include another court besides the only court that is, in fact, located in St. Charles County, Missouri.

Finally, the Court is not persuaded by Defendant's argument that the language "*shall be brought* in the court" does not mean that a case must be litigated or decided there. Doc. [24] at 7. The Fifth Circuit recently rejected a similar argument. *See Dynamic CRM Recruiting Solutions, L.L.C. v. UMA Education, Improved*, 31 F.4th 914 (5th Cir. 2022). There, the defendant removed the case to federal court arguing the phrase "*shall be brought before* the district courts of Harris County Texas" did not mean the dispute had to be decided by Harris County district courts. *Id*. at 919. The Fifth Circuit rejected that argument after careful analysis. *Id*. at 920. The court began with the plain, ordinary, and accepted meaning of the phrase and found that "lay dictionaries define the phrase, 'bring before' as 'to cause (someone or something) to come to (someone or something) for an official decision or judgment.'" *Id*. (citing *Bring Before*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ brought%20before (last visited March 15, 2022)). [4] According to the Fifth Circuit, "[n]othing about this definition suggests that an issue is only 'brought before' some authority if it was not previously brought before another authority." *Id*. at 920-21. Reading the phrase according to its legal definition resulted in the same conclusion. Black's Law Dictionary defines "bring an action" as "[t]o sue; institute legal proceedings." *Id*. at 921 (citing *Bring an Action*, Black's Law Dictionary (11th ed. 2019)).[5] The Fifth Circuit reasoned the "modern view of removal" is "more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had

---

[4] The phrase "bring in" is defined as "to report to a court." *Bring In*, Merriam-Webster, https://www.merriam-webster.com/dictionary/brought%20in (last visited October 21, 2024).

[5] The definition is the same in the 12th Edition. *See Bring an Action*, Black's Law Dictionary (12th ed. 2024).

10

commenced in federal court . . . . To treat removal as the commencement, or bringing of, a proceeding in a federal district court for purposes of a forum selection clause therefore makes sense, given that the law treats removal as commencement of a proceeding in the district court for most other purposes." *Id*. And legal authorities "have long described actions removed from state court as having been 'brought before' the federal court to which they were removed." *Id*.; *see id*. at n. 25 (collecting cases). Finally, the court noted a "bevy of cases from around the country in which courts have confronted the question of whether similarly worded forum selection clauses preclude removal from the state courts specified as the exclusive fora for contractual disputes[, and] [w]ith a few exceptions, courts have uniformly found that such provisions bar removal." *Id*. at 921. The Court finds the Fifth Circuit's analysis persuasive and applicable with equal force to the phrase "*shall be brought in* the court." Thus, the Court finds that Defendant "clearly and unequivocally" waived its right to remove the case to federal court.

### III. All claims are remanded to the Circuit Court of St. Charles County, Missouri.

#### A. Plaintiff's federal claims involve the same operative facts as a parallel claim for breach of the Settlement Agreement.

The parties dispute whether the Settlement Clause encompasses Plaintiff's federal Lanham Act claims. Defendant argues forum selection clauses are "creatures of contract and apply only to such claims that sound in contract." Doc. [24] at 8. The Court disagrees and finds *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997), instructive. There, the Eighth Circuit stated, "[w]hether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case."[6] Here, the forum selection clause applies broadly to "any proceedings *related to* this Agreement, or to enforce or interpret this Agreement." Doc. [20-2] at 7 (emphasis added); *see Ross v. Extreme Technologies, Inc.*, 2009 WL 10671679, *5 (W.D. Mo. Dec. 21, 2009) (citing *Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128-29 (2d Cir.

---

[6] It is true that *Terra* involved tort claims and this case involves statutory trademark claims. In *Holm v. Art Leather Mfg., Inc.*, 2006 WL 1662722, *2 n.2 (D. Minn June 12, 2006), the court applied *Terra* to determine whether the forum selection clause applied to Plaintiff's statutory claims. The court recognized "that *Terra* involved allegedly related tort claims, whereas this case involves allegedly related statutory claims," but it did not find "the distinction sufficiently significant to deviate from the guiding principles articulated in *Terra*." *Id*. And it found that the "test articulated in and relied upon in *Terra* translates easily into this context." *Id*.; *see also Ross v. Extreme Technologies, Inc.*, 2009 WL 10671679, *6 (W.D. Mo. Dec. 21, 2009) (applying *Terra* to determine whether a forum selection clause applied to claims under the Lanham Act and other state statutes). The Court agrees and applies *Terra* in this context.

2001)) ("The words 'relating to' are less restrictive than 'arising out of' and indicate that a claim may be 'associated with' an agreement to be covered."). "Where the forum selection clause is broad, but not clear regarding tort claims . . . [g]enerally a forum selection clause will apply in the following cases: (1) where the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) where resolution of the tort claims relates to interpretation of the contract; or (3) where the tort claims involve the same operative facts as a parallel claim for breach of contract." *Kleiman v. Kings Point Cap. Mgmt., LLC*, 2018 WL 3328012, *3 (E.D. Mo. July 6, 2018) (citing *Terra Int'l*, 119 F.3d at 694). Plaintiff's claims fall into the third category.

Plaintiff's breach of contract claim alleges that Defendant . . .

> . . . has breached the Settlement Agreement in multiple respects, including by bidding on Shield, CarShield and their variants on search engines; by failing to include Shield, CarShield and their variants as negative keywords on search engines; and by failing to ensure its Third Party Advertisers[7] comply with these same key word and advertising requirements (both nonuse of Shield, CarShield and variant marks, as well as using those terms as negative keywords).

Doc. [5] ¶ 102. The Settlement Agreement provides in relevant part:

   a. Endurance has ceased and will not again use and/or purchase any terms including the term SHIELD, alone or in combination with other terms, including but not limited to CARSHIELD, CAR SHIELD, and CARSHIELD.COM, as well as any other confusingly similar marks to those phrases, and/or any combination of the terms CAR together with SHIELD, as keywords or metadata for the purpose of advertising on any Internet search engine, including but not limited to Google, Yahoo! or Bing. Nothing in this section shall prevent Endurance from using on its website the terms "shield" or "car" as individual words separate from one another, in a descriptive manner, and not as a brand or keyword. By way of non-limiting example, Endurance shall not use the aforementioned phrases CARSHIELD, CAR SHIELD, and CARSHIELD.COM, nor the phrase "shield car", but may use on its website phrases such as "protect your car" " [*sic*] or "Endurance can shield you from high costs."

   b. Endurance has included and will continue to include the "negative keywords" CARSHIELD, SHIELD, and CARSHIELD.COM in any Internet search engine or other online platform (such as Google AdWords) in which Endurance advertises.

   c. Endurance will direct any third party companies that advertise on its behalf to implement the provisions of subsections **a** and **b** within two (2) business days of execution of this Agreement.

---

[7] "Third Party Advertisers" means "other advertising and marketing vendors and affiliates." Doc. [5] ¶ 4.

Doc. [5-1] at 3-4.  Plaintiff argues that its Lanham Act claims[8] all arise out of the same facts as the alleged breach of the Settlement Agreement.  Doc. [20] at 15.  Defendant responds by pointing to Plaintiff's allegation in the Complaint that "its claims of infringement under federal law are 'separate and independent' from its breach-of-contract claim."  Doc. [24] at 8.  But Defendant's argument contradicts its notice of removal, which states: "Plaintiff's breach of contract claim in Count I, Plaintiff's Missouri common law claims in Count VIII, and Plaintiff's Missouri statutory claims in Counts IX and X all arise from the same common nucleus of operative fact that form the basis of Plaintiff's Lanham Act claims in Counts II through VII."  Doc. [1] ¶ 13.  The Court's independent review of the claims is consistent with Plaintiff's argument and Defendant's notice of removal.  All of Plaintiff's Lanham Act claims involve the same operative facts as the claim for breach of the Settlement Agreement.

Counts II, III, and IV allege that Defendant and its Third Party Advertisers' continued use of Plaintiff's CarShield Marks[9] causes confusion, deception, or mistake.  *Id*. ¶¶ 106-135.  And Count VII alleges this continued use "dilutes and/or is likely to dilute the distinctive and unique quality of the CarShield Marks and to significantly reduce both consumers and CarShield's ability to identify and distinguish CarShield's products and services."  *Id*. ¶ 165.  While Count V and VI are not solely focused on Defendant's use of the CarShield Marks, the factual allegations common to all claims tie Count V and VI to Defendant's use of the CarShield Marks.  For example, while Count V focuses on  "Defendant's operation of, participation in, sponsorship of, hiring of and/or use of pay-to-play websites," Plaintiff alleges that many of the companies operating such websites "bid on and purchase the keyword CARSHIELD (or variations thereof)

---

[8] Plaintiff's Lanham Act claims include:

    Count II: Violation of Lanham Act § 32, 15 U.S.C. § 1114 – Infringement of Federally Registered Trademarks

    Count III: Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Designation of Origin and False or Misleading Description of Fact as to the CarShield Marks

    Count IV: Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) - False Designation of Origin and False or Misleading Description of Fact as to the CarShield Logo

    Count V: Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)(1)(B) – False Advertising and Unfair Competition

    Count VI: Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False Advertising

    Count VII: Violation of Lanham Act Section 43(c), 15 U.S.C. § 1125(c) – Trademark Dilution

[9] Plaintiff's Complaint uses "CarShield Marks" to refer to CarShield's trademarks.  Doc. [5] ¶ 28.

to generate numerous false ads, then send customers not to CarShield as searched for, but rather only to companies that pay to get referred business." *Id*. ¶¶ 86, 137.  And while Count VII addresses Defendant's "use of phrases such as 'auto warranties', 'car warranties' and 'extended car warranties' on the websites it owns, operates, participates in, and/or uses," Plaintiff claims consumers reach Defendant's websites "by specifically requesting CarShield on internet search engines, and without searching at all for [Defendant]." *Id*. ¶¶ 66, 147.  Because those counts allege the same operative facts as the breach of contract claim, the Settlement Clause applies, and the federal claims must be remanded.

**B. The Court declines to exercise supplemental jurisdiction over the state law claims.**

The Court need not address whether Plaintiff's state law claims involve the same operative facts as the claim for breach of the Settlement Agreement.  Because the only claims over which this Court has original jurisdiction must be remanded to state court consistent with the Settlement Clause, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, Doc. [19], is **GRANTED** for the reasons stated in this Memorandum and Order.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court of St. Charles County, Missouri.

A separate Order of Remand will accompany this Memorandum and Order.

Dated this 21st day of October, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE